Commonwealth *v.* Davis, Appellant.

Argued April 22, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

*John W. Packel,* Assistant Defender, with him *Anne F. Johnson,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*John W. Morris,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 1, 1974:

Appellant, Arthur Lee Davis, was arrested in connection with a milk delivery truck robbery in Philadelphia. He pled not guilty and, after waiving a jury trial, was convicted on counts of aggravated robbery and burglary and sentenced to serve concurrent one and one-half to five year terms on each charge. No post-trial motions or appeals were taken at that time.

Following a 1971 Post Conviction Hearing Act petition, appellant filed nunc pro tunc post-trial motions, alleging denial of his right to confrontation and denial of effective assistance of counsel. An evidentiary hearing was held, after which his post-trial motions were denied. Appeal to the Superior Court resulted in a per curiam opinionless affirmance. Judge PACKEL wrote a dissenting opinion, which was joined by Judges HOFFMAN and SPAULDING. 222 Pa. Superior Ct. 434, 295 A.2d 155 (1972). We granted allocatur to examine two issues raised by appellant.

At trial, the testimony of the milk truck driver, the complaining witness, was introduced by stipulation between defense counsel and the district attorney. It was stipulated that if the driver were present, he would testify that two men, one armed with a gun, entered his truck and robbed him of $200. It was further stipulated that at the preliminary hearing, the driver had identified appellant as one of the men.

Appellant first contends that his counsel's stipulation to this testimony, which placed him at the scene of the crime and named him as a participant, was in

fact a stipulation of guilt, despite appellant's plea of not guilty. Appellant further contends that since the testimony entered by stipulation was so damaging, the admission of the stipulation should have been surrounded by safeguards similar to those attending the entry of a guilty plea.

With this contention we agree. While it is true that appellant did not plead guilty, and, therefore, it was still possible for the court to find him not guilty, such a verdict would have been extremely unlikely. Not only did appellant stipulate to the testimony that would have been offered by the complaining witness, thereby giving up the opportunity to cross-examine the witness for purposes of attacking his credibility, his memory, or his capacity to observe, but also appellant offered no defense in his own behalf. Under such circumstances, the stipulation to the witness's testimony made the outcome a foregone conclusion. The United States Court of Appeals for the Sixth Circuit came to much the same conclusion in *Julian v. United States,* 236 F.2d 155 (1956), and held that when the defense counsel stipulates to facts which will support a conviction of his client, Rule 11 of the Federal Rules of Criminal Procedure requires that the court inquire whether the defendant understands the charges against him and voluntarily acquiesces in the stipulations. Our Rule 319(a) of the Pennsylvania Rules of Criminal Procedure has a similar requirement.

Since no such on-the-record colloquy appears in this case, we are faced with a situation analogous to silent-record cases involving a challenge to a guilty plea entered after our decision in *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968). In such cases, we have held that the burden is on the Commonwealth to establish that the defendant's decision to plead guilty, thereby waiving many of his constitutional rights, was knowingly and voluntarily

made. Similarly, in cases such as the instant one, the Commonwealth must show that appellant's decision to waive his valuable Sixth Amendment right to confront the Commonwealth's witnesses against him, was a knowing and understanding one.

At the PCHA hearing, appellant claimed that he was never informed of his right to demand the presence of the complainant and to have him cross-examined by his attorney. However, appellant's trial counsel rebutted this evidence by testifying that he had discussed the consequences of the stipulation with appellant and explained to him that in his opinion the complainant's testimony would be even more damaging if presented in person. According to counsel, appellant told counsel that he should do whatever he thought best. Since the record also indicates that appellant had been involved in several other cases in which he had been represented by the same attorney, and, therefore, was not unfamiliar with trial procedure, we believe that the record supports the court's findings that when appellant made his decision to waive his right to confront the complaining witness in this case, he was totally aware of the consequences of that decision.

Appellant next contends that he was denied effective representation of counsel. In making this argument, he emphasizes counsel's decision to stipulate to the testimony of the complaining witness and the fact that counsel offered absolutely no defense at trial, limiting his presentation to the following closing statement: "The defense rests. If your Honor please, this man has been in jail for almost a year. This man has a narcotics problem."

The dissenters in the Superior Court were of the opinion that counsel's trial strategy amounted to a decision to have appellant plead guilty, a decision which should have been left to appellant. As indicated

previously, we agree with the dissenters' conclusion that, for all practical purposes, trial counsel's strategy amounted to a decision to have his client plead guilty. But we have already determined that there is sufficient evidence to sustain a finding that appellant knowingly and voluntarily participated in that decision. The strategy was obviously designed to obtain a more lenient sentence for appellant. In view of the sentence which appellant received and in view of the fact that counsel was successful in sustaining demurrers to several narcotics charges against appellant which stemmed from the discovery of narcotics on his person when he was searched at the police station after his arrest for the milk truck robbery, we cannot say that counsel's representation was without some reasonable basis designed to effectuate appellant's interests. *Commonwealth v. Hill,* 450 Pa. 477, 301 A.2d 587 (1973); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

Judgment of sentence affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. Appellant was denied his constitutionally-guaranteed right to effective assistance of counsel. The reasons for my dissent are substantially the same as those expressed by Judge PACKEL in the Superior Court, *Commonwealth v. Davis,* 222 Pa. Superior Ct. 434, 435, 295 A.2d 155, 156 (1972) (PACKEL, J., dissenting, joined by HOFFMAN and SPAULDING, JJ.):

"The constitutional right to effective assistance of counsel at a trial to determine guilt is denied if the defendant's attorney admits guilt. The conduct of counsel for the appellant constituted such an admission.

"Defense counsel stipulated during trial that were the complainant present and sworn he would have testified that: at 4:00 p.m. on December 31, 1968, two men entered his milk truck, pointed a pistol at his head and demanded all of his money; after he complied, the thieves withdrew and he notified the police; and, at the preliminary hearing, he identified the appellant as one of the two robbers. The complete closing speech of appellant's counsel was: 'If Your Honor please, this man has been in jail for almost one year. This man has a narcotic problem.'

"The Commonwealth's case hinged upon identification. Although one policeman testified that he saw a person running in the vicinity of the incident who fitted the general description later given by the complainant, it was the identification by the complainant himself which was the pivotal evidence in the case. Defense counsel gave up the opportunity to cross-examine and this was not part of a planned strategy based on availability of other witnesses to attack the identification.

"Competency of counsel is not to be measured by 20-20 hindsight, but rather by the determination of whether 'the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests,' Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) . . . .

"Under the circumstances of this case, the stipulation, particularly with reference to identification, amounted to an admission of criminal responsibility which was not consonant with a plea of not guilty. The determination of whether to plead guilty or not guilty or whether a plea should be changed is reserved to the defendant. A.B.A. Project on Minimum Standards for Criminal Justice, *Standards Relating to the Defense Function*, § 5.2 (1972). Even the sincere desire to minimize circumstances tending to aggravate

the appellant's case did not justify the adoption of a trial strategy which effectively altered a plea of not guilty.

"Defense counsel's closing speech at the very least was an implied admission of the defendant's guilt. Certainly, the important right to make a closing speech is not to be converted to a mere plea for leniency. It was improper for counsel to make an admission of guilt in order to give the interest in securing a favorable sentence, if convicted, a greater emphasis than the interest in securing an acquittal." Id. at 435-36, 295 A.2d at 156-57.

Additionally, I would emphasize that a plea for leniency is proper only *after* guilt or innocence has been determined. *After* an adverse verdict, counsel's role is to "present to the court any ground which will assist in reaching a proper disposition favorable to the accused." ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 8.1 (Approved Draft, 1971). However, prior to verdict, it is counsel's duty to advocate his client's innocence "to the utmost of his learning and ability." Id. § 1.1(b).

In this case, counsel's trial behavior was inconsistent with his constitutionally-mandated "primary role . . . to act as champion for his client." Id., Introduction at 145. The judgment of sentence should be reversed and a new trial granted.